**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

X

IN RE:

WAYNE RAMJOHN

IN PROCEEDINGS UNDER CHAPTER 11

CASE NO. 1-15-10388-JLG

Debtor

X

**DEBTOR'S MOTION SEEKING PERMISSION TO SELL REAL PROPERTY LOCATED AT 741 WHITTIER STREET, BRONX, NY FREE AND CLEAR OF LIENS AND ENCUMBRANCES**

**PLEASE TAKE NOTICE**, that upon the annexed affirmation and affidavit of Wayne Ramjohn upon all the prior pleadings, the undersigned will move this court, on June 11, 2019 at 11:00A.M. before Hon. James L. Garrity, Courtroom 601, United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004 , for an order granting permission to sell real property free and clear of liens and encumbrances and for such other and further relief as this Court deems just and equitable under the circumstances.

**PLEASE TAKE FURTHER NOTICE**, that objections , if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be (i) delivered to the chambers of the assigned Bankruptcy Judge, (ii) filed with the Bankruptcy Court and (iii) served upon Narissa A. Joseph, Esq. 305 Broadway, Suite 1001, New York, New York 10007 so as to be received no later at least two (2) days prior to the return date of this motion.

Dated:   New York, New York
         June 2, 2019

                                        /s/ Narissa A. Joseph, Esq
                                        By: Narissa A. Joseph
                                        *Attorneys for Debtor*
                                        Law Office of Narissa A. Joseph
                                        305 Broadway, Suite 1001
                                        New York, New York 10007
                                        Tel: (212) 233-3060
                                        Fax: (646) 607-3335

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
IN RE:

WAYNE RAMJOHN

Debtor
---------------------------------------------------------------X

IN PROCEEDINGS UNDER CHAPTER 11

CASE NO. 1-15-10388-JLG

**AFFIRMATION IN SUPPORT**

Narissa A. Joseph, an attorney duly admitted to practice law in the Courts of the State of New York, affirms the following under penalties of perjury:

1. I am the attorney for the debtor herein and as such am fully familiar with the facts and circumstances of this case.

2. The Court has jurisdiction over this motion pursuant to 28 U.S.C. Section 157 and 1334.

3. This is a core proceeding pursuant to 28 U.S.C. Section 157.

4. The statutory predicate to the relief requested is 11 U.S.C. section 363.

**Background**

5. On February 23, 2015, Wayne Ramjohn (the "Debtor") filed a petition for Chapter 13 Bankruptcy. The Debtor's case was converted to Chapter 11 on March 17, 2019.

6. On April 24, 2019, the Debtor filed a Plan calling for the sale of the Debtor's property located at 741 Whittier Street, Bronx, NY as a means of implementing said Plan.

7. The Debtor does not have a mortgage on the Property.

8. The Debtor requests permission to sell the Property.

9. The Purchaser is a good faith purchaser and is not related to the Debtor. The purchase price was determined based on arms length negotiation and the buyer and the Debtor wish to close as soon as possible.

10. The Debtor believes that the sale is fair and reasonable and is in the best interest of the estate. The Debtor respectfully requests that this Court enter into an order approving the sale to Purchaser.

11. Because the sale is an arms length transaction, it is requested that the Debtor not be required to advertise or otherwise notice the sale pursuant to Bankruptcy Rule 2002.

18. It is respectfully requested that the Court approve the sale of the Debtor's property free of liens and encumbrances.

19. It is further requested that at the time of the sale that the standard closings costs be paid. This includes taxes, real estate attorney and other standard costs.

WHEREFORE, it is respectfully requested that the Court grant the debtor's motion for permission to sell the property free and clear of liens and encumbrances, the standard closing costs be paid at closing and for such other relief deems proper.

Dated:   New York, New York

       June 2, 2019

/s/ Narissa A. Joseph, Esq
By: Narissa A. Joseph
*Attorneys for Debtor*
Law Office of Narissa A. Joseph
305 Broadway, Suite 1001
New York, New York 10007
Tel: (212) 233-3060
Fax: (646) 607-3335

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

X

IN RE:

WAYNE RAMJOHN

Debtor

X

IN PROCEEDINGS UNDER CHAPTER 11

CASE NO. 1-15-10388-JLG

**AFFIDAVIT**

STATE OF NEW YORK
COUNTY OF NEW YORK ss.

Wayne Ramjohn, being duly sworn deposes and states the following under penalty of perjury:

1. I am sole owner of the real property located at 741 Whittler Street, Bronx, NY 10474 (the "Property").
2. I filed the herein Bankruptcy on February 23, 2016.
3. My proposed Plan of Reorganization calls for the sale of the premises located at 741 Whittler Street, Bronx, NY 10474.
4. The house has violations and it was very difficult to find a Purchaser willing to take the Property subject to the violations.
5. I found this Purchaser after I placed a For Sale Sign on the Premises. The Purchaser and I negotiated to the terms of the attached Contract of Sale (Exhibit A). He is a developer who is paying cash and allowing me to use the closing proceeds to cure the violations after the closing.
6. I have no connection to the Purchaser.

7. WHEREFORE, it is respectfully requested that the Court grant the debtor's motion for permission to sell the property free and clear of liens and encumbrances; that standard closing costs be paid at closing; and for such other relief deems proper.

Dated: New York, New York
June 2, 3019

/s/ Wayne Ramjohn

Wayne Ramjohn

Sworn to before me this
2nd Day of June, 2019
/s/ Narissa A. Joseph
Notary Public
Narissa A. Joseph
Notary Public- State of New York
No: 02J0610080
Qualified in Kings County
Commission Expires October 14, 2019

# EXHIBIT A

A-125-Residential contract of sale 11-2000

*Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.*

**WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").**

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

**Residential Contract of Sale**

**Contract of Sale** made as of May , 2019 BETWEEN
WAYNE RAMDIN

Address: 1103 East 213th Street , Bronx , NY , 10469
Social Security Number/ Fed. I.D. No(s): hereinafter called "Seller" and

1 ROSE REALTY LLC

Address: 321 Fort Lee Road , Leonia , NY , 07605
Social Security Number/ Fed. I.D. No(s): hereinafter called "Purchaser".

## The parties hereby agree as follows

1. **Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:
Street Address:
741 Whittier Street Bronx, New York 10474
Tax Map Designation: District: Section: 10
Block: 2763 Lot: 332

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items).

Excluded from this sale are furniture and household furnishings and

3. **Purchase Price.** The purchase price is payable as follows: $ 500,000.00

(a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"): $ 25,000.00

(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed: $ 0.00

(c) by a purchase money note and mortgage from Purchaser to Seller: $ 0.00

balance at Closing in accordance with paragraph 7: $ 475,000.00

~~4. Existing Mortgage. (Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
~~(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of percent per annum, in monthly installments of $ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on~~
~~(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.~~

~~(c) If there is a mortgage escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.~~

~~(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.~~

~~(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

~~4. Purchase Money Mortgage. (Delete if inapplicable) If there is to be a purchase money mortgage as indicated in paragraph 2(c) above:~~

~~(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $ for its preparation.~~

~~(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than percent per annum and the total debt service thereunder shall not be greater than $ per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.~~

6. Downpayment in Escrow. (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at address:

Capital One Bank, NA 121 Middleneck Road, Great Neck, NY 110[illegible]

until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7. Acceptable Funds. All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $ 1,000.00;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 500.00 ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

~~8. Mortgage Commitment Contingency. (Delete paragraph if inapplicable. For explanation, see Notes on Mortgage Commitment Contingency Clause) (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ for a term of at least years (or such lesser term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home,~~

~~[illegible]~~

~~(b) [illegible]~~

~~(c) [illegible]~~

~~(d) [illegible]~~

~~(e) [illegible]~~

~~(f) [illegible]~~

~~(g) [illegible]~~

~~(h) [illegible]~~

~~(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.~~

~~(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.~~

Provided the same do not render title un-marketable.

9. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, ~~and landmark, historic or wetlands designation~~, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway; Hwy not to exceed 12"

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

10. **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the ~~date hereof~~ closing by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) (Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

11. **Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, except

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

12. **Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of

repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(f)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13. Insurable Title.** Seller shall give and Purchaser shall accept such title as: Any NYS Licensed Reputable Title Company

shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**14. Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a

**Bargain & Sale Deed with Covenants vs. Grantors Act**

deed in proper statutory short form for recording, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15. Closing Date and Place.** Closing shall take place at the office of: Mirkin & Gordon, P.C. 98 Cutter Mill Road Great Neck, NY 11021

at 10 o'clock on ~~June 15, 2018~~

or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of:

Mirkin & Gordon, P.C. 98 Cutter Mill Road Great Neck, NY 11021,

[Handwritten in margin: on or about thirty (30) days from the date upon which Purchaser's counsel receives fully executed contract]

**16. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a [handwritten: 3] family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a certification stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a [handwritten: final water meter] reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

**20. Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. Title Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.** (a) If Purchaser willfully defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than:

None

("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28. Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience or reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall

not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

(l) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

Continued on Rider attached hereto. *Delete if inapplicable.*

In witness whereof, this contract has been duly executed by the parties hereto.

WAYNE RAMJOHN *Seller* J ROSE REALTY LLC *Purchaser*

*Seller* *Purchaser*

**Attorney for Seller:**
Mirkin & Gordon, P.C. by: Arthur J. DiBerardino, Esq.
Address: 98 Cutter Mill Road Suite# 310N
Great Neck, New York 11021
Tel.: 516-466-6030 Fax: 516-487-1568

**Attorney for Purchaser:**
Peter Piergiovanni, Esq.
Address: 983 Morris Park Avenue
Bronx, NY 10461
Tel.: 718-822-0707 Fax:

Receipt of the downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

Mirkin & Gordon, P.C. *Escrowee*

## NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE
*for*
## RESIDENTIAL CONTRACT OF SALE

1. WARNING: the mortgage commitment contingency clause for the Residential Contract of Sale is a bar association form that attempts to provide a mechanism that defines the rights and obligations of the parties with respect to financing in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.

2. Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage commitment letter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should insert a calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later. Purchaser should promptly confirm or correct this date. In applying for a loan, Purchaser should inform the lender of the scheduled date of closing in the contract and request that the expiration date of the commitment occur after the scheduled date of closing. Purchaser must comply with conditions and pursue the application in good faith. The commitment contingency is satisfied by issuance of a commitment in the amount specified on or before the Commitment Date, unless the commitment is conditioned on approval of an appraisal. If the commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

3. If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or a condition requiring sale of the current home, those terms and conditions should be specified in a rider.

4. This clause assumes that initial review and approval of Purchaser's credit will occur before the commitment letter is issued. Purchaser should confirm with the lender that this is the case before applying for the commitment.

5. If, as has been common, the commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding debt or no material adverse change in Purchaser's financial condition, such a commitment will satisfy the contract contingency condition, and Purchaser will take the risk of fulfilling those commitment conditions, including forfeiture of the downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting purchaser may not recover any part of the downpayment and Seller does not have to prove any damages. If Purchaser is not willing to take this risk, the clause must be modified accordingly.

6. Purchaser may submit an application to a registered mortgage broker instead of applying directly to an Institutional Lender.

7. This clause allows Seller to cancel if a commitment is not obtained by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the commitment, to allow Seller the option to avoid having to wait until the scheduled date of closing to see if Purchaser will be able to close. Seller may prefer to cancel rather than to wait and seek the forfeiture of the downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not waive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

8. Purchaser may want to add to paragraph 23 that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract of sale [alternative: if Seller is unable to transfer title under the contract of sale].

Distributed by
TitleVest
www.titlevest.com

**RIDER TO CONTRACT OF SALE BETWEEN
WAYNE RAMJOHN, AS SELLER(S)
AND 1016 BEACH 19 STREET, LLC, AS PURCHASER(S)
PREMISES: 741 WHITTIER STREET, BRONX, NY 10474**

1. In the event that there is any ambiguity or conflict between the terms of the pre-printed Contract and this Rider, this Rider shall control and prevail.

2. Purchaser shall take the Premises in strictly "as is" condition inclusive of all personal property in and about the Premises.

3. Purchaser shall take the Premises in strictly "as is" condition without any representations, conditions warranties regarding any of the systems at the Premises including, but not limited to, the plumbing, electrical, mechanical, heating, cooling systems or as to any equipment, machinery or appliances or as to the condition, fitness or integrity of any structures including, but not limited to, the steps/stairs, roof, windows, basement, etc.

4. Purchaser shall take the Premises subject to any tenants, occupants or squatters as may be present at the Premises.

5. Seller shall cure all violations of record as of the date hereof. Purchaser agrees to close title subject to the violations on the condition that Seller's attorney shall hold $~~[illegible]~~ $185,000 of the sale proceeds in escrow to ensure that Seller cures said violations post-closing. Seller shall be entitled to use the escrowed funds to cure such violations and pay any costs/fines/penalties associated therewith. Requests to disburse said funds shall be presented to Purchaser's attorney and shall be accompanied by such information/documents as may be available to document said request. Said funds shall be disbursed upon receipt of Purchaser's attorney's consent which shall not be unreasonably withheld or delayed.

   This provision shall survive closing of title.

6. An electronic copy of the Contract and Rider(s) may be treated as an original and may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the same force and effect as if such facsimile of ".pdf" signature page were an original thereof.

Seller | Purchaser

Seller | Purchaser

First American Title Co.
Title # 3001-26544

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

T.T.
$510

THIS INDENTURE, made the 27th day of May, [illegible]

BETWEEN

[illegible] residing at
[illegible]

party of the first part, and

[illegible] residing at
1103 East 233rd Street Bronx, NY 10469

party of the second part,

WITNESSETH, that the party of the first part, in consideration of Ten dollars paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

[illegible]

BEGINNING at [illegible]

RUNNING THENCE easterly at right angles to [illegible] Street, 100 feet;

THENCE southerly parallel with [illegible] Street, 25 feet;

THENCE westerly again at right angles to [illegible] Street, 100 feet to the easterly side of [illegible] Street;

THENCE northerly along the easterly side of [illegible] Street, 25 feet to the point or place of BEGINNING.

Sec: 10
Blk: 2763
Lot: 352

Being the same premises conveyed to the parties of the first part herein by deed recorded in Reel 1114 page 2386.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

[signature]

[signature]
[illegible]

[signature]
[illegible]

[illegible]